UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ) | |
| ) | |
| ) | Case No.: |
| KATHERINE KRAUSE, ) | |
| ) | **COMPLAINT FOR DAMAGES** |
| Plaintiff, ) | |
| ) | **JURY TRIAL DEMANDED** |
| v. ) | |
| ) | |
| JUSTIN D. SHARPIRO, HOWARD ) | |
| SHAPIRO, and URBAN AMERICA LLC ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| | |
| _____ ) | |

Plaintiff Katherine Krause ("**Plaintiff Krause**") brings this action and makes the following allegations on information and belief, except as to those paragraphs that pertain to Plaintiff Krause, which are based upon personal knowledge.  Plaintiff Krause's information and belief are based on, *inter alia*, the investigation made by her attorneys.

## NATURE OF THE ACTION

1.      This action is, in essence, Plaintiff's $100,000 loss due to the proverbial "fake it until you make it" scheme by defendants.  Defendant Justin D. Shapiro ("**Defendant JDS**") is purportedly a serial entrepreneur, who claims to have owned several restaurants and other business ventures. In the summer of 2018, he offered Plaintiff Krause, who knew Defendant JDS through mutual friends, potential restaurant ventures, and shared childhood roots in Chicago, Illinois, an

opportunity to purchase a $100,000 one-year term note security paying 10% interest (see Exhibit A., the "**Note Security**") to finance defendant Urban America LLC, an investment vehicle controlled by Defendant JDS.  Defendant JDS represented to Plaintiff Krause that proceeds from the Note Security would be used to facilitate the development of a hydro-electric power plant in Montenegro (the "**Hydro-Project**") and the Note Security gave Plaintiff Krause and option to convert the Note Security into a five percent direct equity participation in the Hydro-Project. Defendant JDS further represented to Plaintiff Krause that (1) the Note Security would be secured by Defendant JDS's real property (*i.e.* his 50% equity interest in 1711 Devonshire Lane, Lake Forest, Illinois 60045, hereinafter the "**Lake Forest Property**") and his personal property (*i.e.* commercial-grade recording studio equipment) and (2) Defendant JDS would personally guarantee repayment of the Note Security to Plaintiff Krause.   Defendant JDS memorialized his representations of securitizing the Note Security by drafting and executing a "**Pledge Agreement**" (see Exhibit B.  Defendant JDS produced an investor presentation containing financial projections for the Hydro-Project (see Exhibit C, the "**Investor Deck**").

2.      Plaintiff Krause, seeing that Defendant JDS had mutual friends and he was the son of Defendant Howard Shapiro, Esq. ("**Defendant HS**"), a prominent Chicago-based corporate attorney, had no reason to believe that Defendant JDS's Note Security, Urban America, and the Montenegro hydro-plant were illegitimate.  Therefore, on June 27, 2018, Plaintiff Krause acquired the Note Security in reliance on Defendant JDS's representations made in the Note Security, Pledge Agreement, Investor Deck, and oral and written statements concerning the Hydro-Project (collectively, the "**Offering Materials**"). On June 28, 2018, Plaintiff Krause wired Urban America $100,000 pursuant to the instructions provided by Defendant JDS (see attached Exhibit D, letter of verification).

3.     After Plaintiff Krause's investment in the Note Security and during their discussions about their bar-restaurant venture, Defendant JDS would regularly represent to Plaintiff Krause updates regarding the Hydro-Project.  Defendant JDS would represent that (a) the Hydro-Project had secured additional investors and (b) Defendant JDS entered negotiations with a Chinese bank that sought to acquire the Hydro-Project before construction had begun because the Hydro-Project's future returns would amount to billions of dollars.

4.     In early November 2018, Defendant JDS met with Plaintiff Krause to discuss the Hydro-Project after the bar-restaurant concept venture waned and he sought additional investment funds from Plaintiff Krause while again promoting the promise of the Hydro-Project, even though Defendant JDS knew, but didn't disclose, that (a) Defendant JDS had filed a petition for bankruptcy in the US District Court in Illinois, captioned *In re Justin D. Shapiro*, 18-31969 (JBS) (N.D. Ill. Bankr. 2018) (see Exhibit D, the "**Bankruptcy Petition**") and (b) Defendant JDS and Defendant HS, upon information and belief, had listed the Lake Forest Property for sale on October 15, 2018.  Plaintiff Krause later discovers that the Lake Forest Property, listed as collateral in the Pledge Agreement, was not included as an asset of Defendant JDS in the Bankruptcy Petition. Beyond a Happy Holidays wish during the holiday season of 2018, Plaintiff Krause did not have any material contact with Defendant JDS until close to the Note Security's 2019 maturity.

5.     In June 2019, upon the Note Security's maturity, Defendant JDS contacted Plaintiff Krause to purportedly to ask Plaintiff Krause to execute her option to convert the Note Security into equity in the Hydro-Project in hopes that Plaintiff Krause wouldn't ask for the proceeds of the Note Security upon maturity; however, Plaintiff Krause expressly communicated that she wasn't exercising the option and demanded her principal and interest, totaling $110,000 pursuant to the terms of the Note Security. After multiple months of promises, delays, excuses, and requests for

time to cure the default on the Note Security, Defendant JDS finally, on August 14, 2019, made a $10,000 payment to Plaintiff Krause, and Defendant JDS represented that he would be able to pay her the remaining $100,000 within a few months during the Fall season of 2019.

6.      On or around September 19th, 2019, Plaintiff Krause verified information that Defendant JDS had filed the Bankruptcy Petition.  Even though Plaintiff Krause was technically a creditor of Defendant JDS pursuant to the Pledge Agreement executed prior to the Bankruptcy Petition, Plaintiff Krause was not listed as a creditor in the Bankruptcy Petition.  Moreover, Defendant HS, was listed as a creditor in the Bankruptcy Petition.  According to the Bankruptcy Petition, Defendant JDS sought relief of a $100,000 loan from his father Defendant HS, which was equal to the principal of the Note Security.  Defendant JDS's debts listed in the Bankruptcy Petition, including his father's purported $100,000 loan, were discharged on February 15, 2019.

7.      Upon verifying the Bankruptcy Petition, Plaintiff Krause began to fear that she had been defrauded by a friend and his father in their scheme to extract $100,000 from Plaintiff Krause, which Defendant JDS used to make Defendant HS whole while offering Defendant HS an opportunity to take a $100,000 tax loss via the false Bankruptcy Petition.  After attempting to recover the remaining $100,000, Plaintiff Krause filed the instant lawsuit.

## JURISDICTION AND VENUE

8.      Jurisdiction of this Court is founded on 15 U.S.C. §77v(a) subject matter jurisdiction because Defendants engaged in a fraudulent scheme to offer a security to Plaintiff Krause by means of a prospectus or oral communications, which included untrue statements of material facts or omitted material facts necessary to make the statements not misleading in violation of 15 U.S.C. §77l(a)(2) and 28 U.S.C. § 1332(a)(1) because Plaintiff Krause and Defendant Howard Shapiro, Esq. are citizens of different states and the amount in controversy

exceeds the statutory threshold.

9.      Venue as to Defendants is proper in the Southern District of New York, pursuant to 15 U.S.C. §77v(a) and 28 U.S.C. § 1391(b), (c), because Defendants are found and transact business in the Southern District of New York, the agreement upon which the claims asserted herein contain a jurisdictional clause expressly granting jurisdiction in this venue, and/or the claims arose at least in part in the Southern District of New York.  The federal securities law violations described herein has been carried out, in part, within the Southern District of New York.

## PARTIES

10.      Plaintiff Katherine Krause ("**Plaintiff Krause**") is an individual residing in New York, New York.  On June 27, 2018, Plaintiff entered into both the Note Security and Pledge Agreement with Defendant JDS in connection with Defendant JDS's investment scheme and suffered $100,000 in damages as a result of Defendants' unlawful conduct.

11.      Defendant Justin D. Shapiro ("**Defendant JDS**" or "**Officer Defendant**") has known the Plaintiff Krause for four years, and Defendant's last known residence is 1077 Warburton Ave, #507, Yonkers, New York 10701.  Defendant JDS's previous known address was 239 East 10th Street, Apartment 2B, New York, New York 10003 ("**Defendant JDS NYC Address**").  On November 13, 2018, Defendant JDS (a) had filed a voluntary petition for bankruptcy relief under Chapter 7 using Defendant Howard Shapiro, Esq.s' Illinois address – not the Defendant JDS NYC Address  -  and (b) requested relief was granted pursuant to a February 15, 2019 order.  Plaintiff was never named as a creditor in the Bankruptcy Petition in spite having purchased the $100,000 Note Security to which Defendant JDS was a guarantor pursuant to the Pledge Agreement mere months prior to the Bankruptcy Petition.

12.      Defendant Howard Shapiro, Esq. ("**Defendant HS**") is the father of Defendant JDS

and, upon information and belief, resides on 9400 Hamlin Avenue, Evanston, Illinois 60203, which

is the address listed in the Bankruptcy Petition and shared by Defendant JDS according to the

docket of the Bankruptcy Petition.  Defendant HS was listed as a creditor in the bankruptcy of his

son Defendant JDS.  According to the JDS Bankruptcy Petition, Defendant JDS owed $100,000

to his father Defendant HS since August 2012, and Defendant HS's debt was discharged on

February 15, 2019 by court order.

13.     Urban America LLC ("**Urban America**" or the "**Company**") is a New York

limited liability company doing business at 44 Wall Street, 12th Floor, New York, New York

10005, and the Company is controlled by the Officer Defendant.  The Officer Defendant

represented to Plaintiff Krause that the Company would be engaged in developing a purported

hydro-electricity plant in the Republic of Montenegro referenced as Project Aqua, but it the

Bankruptcy Petition, the Company's nature of business is described as "owns/operates restaurants:

Mezcal LLC (NY) and Ebanos Crossing, LLC (CA)."  Nowhere in the Company's Hydro-Project

Offering Materials state that the Company owns or operates restaurants (see *e.g.* Exhibit C).

## FACTS

### Background

14.     In or around November 2017, the Plaintiff Krause was searching for partners to

open a bar in New York City and was introduced to several possibilities by her friend Stuart Rich,

an attorney who represents bars and restaurants in the area.  Mr. Rich introduced the Plaintiff to

Phil Ward with whom she got along well. Plaintiff Krause and Mr. Ward discussed a concept for

a bar that they both agreed was viable.

15.     After recognizing that the bar would need additional operational management, Mr.

Ward introduced Plaintiff Krause to Defendant JDS, who was Mr. Ward's former business partner

and director of operations in connection with another retail establishment.  Defendant JDS was able to build a rapport with Plaintiff Krause because both had roots in the Chicago, Illinois area. This rapport, coupled with Mr. Ward's good working relationship with Defendant JDS fortified Plaintiff Krause's trust in Defendant JDS.  Since Defendant JDS lived only a few blocks away from Plaintiff Krause, the two frequently interacted on a social level and shared a circle of friends. Defendant JDS would regularly tell Plaintiff Krause how their bar business is strengthened by his access to Defendant HS legal acumen and other prominent attorneys friendly with Defendant HS.

16.     Defendant JDS frequently spoke about his Bosnian business partner, who Plaintiff Krause met twice.  Defendant JDS represented to Plaintiff Krause that he and this Bosnian business partner were seeking investments in order to incorporate clean energy generation in Bosnia-Herzegovina region, which borders Montenegro.  Defendant JDS often talked of investors he could get for the bar and the investors that he was getting for his project in Bosnia and Herzegovina, and he also often told Plaintiff Krause about all of the money these renewable energy investments in the Balkans  would generate – so much money that Defendant JDS would have to withdraw from the prospective bar-restaurant venture. operational position at Plaintiff Krause's bar business.

**Material Misrepresentations Regarding the Hydro-Project**

17.     In or around June 1, 2018, Defendant JDS formally pitched the investment in the Hydro-Project.  Plaintiff Krause initially rejected the investment offer because Plaintiff Krause didn't know enough about clean energy or Balkans region to invest without Defendant JDS providing a guarantee of a return of funds.   In response to Plaintiff Krause's rejection, Defendant JDS countered by stating that (a) he would offer Plaintiff Krause an opportunity to participate in the Hydro-Project investment with similar terms Defendant JDS offered to his own sister and (b) his sister was an investor.   Defendant JDS complimented Plaintiff Krause by stating (a) he

considered Plaintiff Krause to be like a sister to him and (b) Plaintiff Krause reminded him of his sister.  According to Defendant JDS, the terms that he had given his actual sister was a one-year investment in the form of debt that would earn 10% and provide an option to invest more or convert the note into equity of the Hydro-Project.   Around this time, Plaintiff Krause's mother became ill and Plaintiff Krause went to Minnesota to take care of her mother.  Defendant JDS continued to push Plaintiff Krause about the Hydro-Project through the Offering Materials.  Plaintiff Krause rationalized the $100,000 investment in the Note Security because the Note Security would return principal plus ten percent after twelve months and the initial $100,000 investment was less than the amount of capital Plaintiff Krause expected to invest in the bar restaurant venture with Mr. Ward.

18.     Defendant JDS presented Plaintiff Krause the Note Security and Pledge Agreement for her review.  After a few iterations, Plaintiff Krause and Defendant JDS executed the Note Security and the Pledge Agreement on June 27, 2018.

19.     The Note Security defined Defendant JDS as the "Borrower" and Plaintiff Krause as the "Lender".  Section 5 contained the Note Security's conversion mechanism granting Plaintiff Krause an option to convert the Note Security into a five percent equity stake in Defendant JDS's "New Venture".   In Section 6 of the Note Security, Defendant JDS is considered in default of the Note Security if:

 "(1) Borrower fails to pay the Loan and Interest within 72-hours of the three hundred and sixty-fifth day from the date when Borrower receives said Loan from Lender ("Default"), unless Lender and Borrower have otherwise agreed in writing to exercise Lender's Option;

(2) Borrower breaches any material obligation to the Lender under this Note or other agreement connected to the Lender's Option and Borrower fails to cure such breach within

fourteen days after written notice is delivered on Borrower on Lender's behalf; (3) a receiver is appointed for any material part of the Borrower's property, the Borrower makes a general assignment for the benefit of creditors, or the Borrower becomes a debtor or alleged debtor in a case under the U.S. Bankruptcy Code or similar proceeding for the general adjustment of Borrower's debts or for Borrower's liabilities; or (4) Borrower's equity holders or management adoption a resolution or plan for the dissolution or winding up of the Borrower (each a "Default Event")."

The Note Security expressly provided that "[u]pon the occurrence of a Default Event, the Loan and Interest become immediately due and payable in full without further notice or demand by the Lender."  The Pledge Agreement expressly stated Defendant JDS was pledging "as collateral for [Plaintiff Krause's Note Security]" (a) his fifty percent equity interest in "the real property known as 1711 Devonshire Lane, Lake Forest, Illinois 60045" which was appraised, according to Defendant JDS at $650,000 around the time of the Pledge Agreement was presented to Plaintiff Krause and (b) Defendant JDS interest in "commercial grade audio recording equipment…currently appraised to be worth a minimum of $165,000."  Defendant JDS further agreed not to "release or otherwise dispose of any of the Pledge Collateral", and "[Defendant JDS] acknowledge[d] and agree[d] that any interest that it or any holder of [Defendant JDS] has or may have in the pledged collateral shall be junior and subordinate to the interest and rights of [Plaintiff Krause]."  Plaintiff Krause relied on these provisions, plus the other representations Defendant JDS made in the Offering Materials; yet Defendant JDS knew at the time Defendant JDS made the representations that the sums Plaintiff Krause invested in the Note Security would be used to repay his father, Defendant HS, the $100,000 that Defendant JDS had borrowed.  Defendant HS, as counsel to Defendant JDS, knew that the purported Hydro-Project investment was a fiction and

that the sums Plaintiff Krause believed that were being used for that purpose were actually being redirected to satisfy Defendant JDS $100,000 debt.

20.     After purchasing the Note Security, Plaintiff Krause returned to New York to continue advancing the bar business with Mr. Ward, the person who had introduced Defendant JDS to her.  During her due diligence of prospective venues for the bar-restaurant business, Plaintiff Krause ascertained that the business climate was not conducive for her prospective venture with Mr. Ward, and thus she decided to withdraw from any further pursuit of the bar-restaurant business with Mr. Ward.  Due to Plaintiff Krause's withdrawal from the bar-restaurant venture, tensions arose between Plaintiff Krause and Mr. Ward so they no longer have any personal or professional relationship beginning on or about November 1, 2019. Because Defendant JDS was an introduction from Mr. Ward, Plaintiff Krause significantly reduced her personal relationship with Defendant JDS and only maintained a professional relationship with Defendant JDS as an investor in the Note Security.

21.     On November 13, 2018 and unbeknownst to Plaintiff, Defendant JDS filed the Bankruptcy Petition, which named his father Defendant HS – but not Plaintiff – as a creditor. Defendant JDS used Defendant HS's address for the Bankruptcy Petition so Defendant HS knew about the Bankruptcy Petition.  Defendant JDS's filing of the Bankruptcy Petition constituted a default event under the Note Security and accelerated the principal and interest due thereon at the time of the filing, but Defendant JDS did not inform Plaintiff Krause of the Bankruptcy Petition; rather, Defendant JDS continued to masquerade this fraud until the fall season of 2019.

**Note Security Default**

22.     Even though Defendant JDS knew that the Note Security had been in default as of November 13, 2018, Defendant JDS continued his ruse.  On June 24, 2019, Defendant JDS emailed

Plaintiff Krause informing her that the Note Security "is nearing maturity" and Defendant JDS "just wanted to touch base and discuss some options available to [Plaintiff Krause] moving forward." Plaintiff Krause replied via email to Defendant JDS that she had earmarked the principal and interest of the Note Security for another investment with her sisters and therefore, she wanted the principal and interest – *i.e.* $110,000 paid by Defendant JDS upon maturity.

23.     Defendant JDS continued to give Plaintiff Krause the impression that Defendant JDS would be able to wire $110,000 upon the Note Security's maturity date. On June 28, 2019, Defendant JDS represented to Plaintiff Krause via email that the funds would be coming from a Bosnian account in United States currency and the wire would be handled by his accountant. In the same email, he reassured Plaintiff Krause: "Should there be any issues, which I certainly don't anticipate, I'd simply effectuate the transfer to one of our domestic accounts and wire it to you directly from there." On June 29, 2019, Defendant JDS reassured Plaintiff Krause that his accountant will contact Plaintiff Krause on July 1, 2019; however, Defendant JDS's accountant never called Plaintiff Krause. Rather, Defendant JDS telephoned Plaintiff Krause and told her that (a) his accountant had been in a car accident and (b) Defendant JDS would personally transfer the funds once he ascertained the logistics for international wires from Bosnia.

24.     On July 8, 2019, Plaintiff Krause emailed Defendant JDS the following:

"Hey Justin! I'm sorry haven't heard back from you today after calling your bank. From now on let's deal with the payback of the loan here as it's best for me if our personal relationship is put on hold until this is resolved.  Please contact me here moving forward. I'm also sorry to hear that your accountant was in a car crash last week and that this week you didn't file the correct form you needed to with your bank to initiate the wire because you had to do it yourself.  Today I let you know that I expected the money in the account

this Thursday even though you told me it wouldn't be later than Tuesday when we spoke on the phone a week ago. I was giving you and the bank a buffer there. I have given you several days past the 72 grace period [*sic*] to pay this back because I trust you, as we are friends. But that's all I can give you as I am not the only person expecting this money and we are loosing [*sic*] interest on it currently. Please email me here tomorrow morning and tell me I can expect to see the funds in the account by Thursday as I'd love to avoid any mistakes from now on. Thank you!!! Kat Krause".

In his reply email, Defendant JDS stated: ""Good morning Kat! I apologize for not getting back to you late last night, I simply want to ensure any information I'm passing along is 100% accurate. I completely understand your position and am doing everything in my power to get your funds over to you as quickly as I can. I will be in touch with confirmation as quickly as is possible and look forward to then being able to resume our personal relationship. I appreciate you as always and look forward to being in touch very shortly. Very Best, Justin."

       25.    On July 29, 2019, Defendant JDS represented to Plaintiff via email that he would "have the initial payment ready to wire and [he is] awaiting confirmation that the remaining balance will be available within the next 30-days." In the same email, Defendant JDS proposed a remedy for the breach: Defendant JDS wanted the Plaintiff to execute "some type of addendum to [the Note Security] where [Defendant JDS wires] over the initial payment this week (once [Defendant JDS and Plaintiff] agreed upon how it should be allocated), that includes an agreed upon time frame within which the remaining balance must be wired." Defendant JDS concluded his proposal by saying that he was "obviously willing to accept some form of penalty language [Plaintiff][ may wish to add, seeing as how the balance will be more than 30, but no more than 60, days late."

26.     On August 14, 2019, Defendant JDS confirmed a $10,000 wire payment to Plaintiff on the Note.  As of the date of filing this instant action, the remaining principal has yet to be paid to Plaintiff Krause.

**Revelation of the Fraud**

27.     On August 16, 2019, Defendant JDS replied in email to the Plaintiff Krause: "I just heard back from counsel.  Evidently due to executed non-disclosure and confidentiality agreements, I'm unfortunately unable to provide the information you requested." Plaintiff Krause replied to Defendant JDS's email that she only needed the address of the Hydro-Project to which Defendant JDS replied, on August 19, 2019: "Hi Kat, [t]the contact address of the local broker we utilize, is: SB Basagica 71 A (Suite 2) 71000 Sarajevo, BiH."  A few days afterwards, Defendant JDS subsequently identified "Zoran Kasidic" with the phone-number +387 63 557 969.

28.     Plaintiff Krause and her counsel attempted to located this Zoran Kasidic.  Although the address represented by Defendant JDS does not exist, a similar address Baščaršija 71 Sarajevo 71000 on Google Maps points to a money exchange and open-air market.   Independent research has not located any hydro-electric project similar to the Hydro-Project sold to Plaintiff Krause by Defendant JDS.

29.     In or around September 2019, Plaintiff Krause viewed the Bankruptcy Petition (Exhibit D).  According to the Bankruptcy Petition, Defendant JDS stated that Urban America, the vehicle purportedly investing the proceeds from the Note Security in the Hydro-Project, had a value of $0.00.  Defendant JDS stated in the Bankruptcy Petition that his address was 9400 Hamlin Avenue, Evanston, Illinois 60203, the same address as his father Defendant HS.  Defendant JDS also stated in the Bankruptcy Petition that his total liabilities were $370,078.88, of which $100,000 was purportedly owed to his father Defendant HS.  Notably missing from the Bankruptcy Petition

is the Note Security since Plaintiff Krause a creditor pursuant to the Pledge Agreement.  Also

missing are any references to the pledged collateral, such as the Lake Forest Property and the

recording equipment.  Upon reviewing the Bankruptcy Petitioner, in which the Defendant JDS

provided false information, Plaintiff Krause was hit with the following realization: if Defendant

JDS and his prominent attorney father Defendant HS were willing to defraud a United States

Bankruptcy Court in the Northern District of Illinois, those same defendants defrauded her.


### COUNT I

### VIOLATION OF SECTION 12 OF THE
### SECURITIES ACT

30.    Plaintiff incorporates by reference the allegations in the above paragraphs 1 through

27 as if fully set forth herein.

31.    This Count is asserted against the Company and Officer Defendant (collectively,

the "Section 12 Defendants") for violations of Section 12(a)(2) of the Securities Act, 15 U.S.C.

§77l(a)(2).

32.    The Section 12 Defendants were sellers, offerors, and/or solicitors of sales of the

securities issued in the Note Offering pursuant to the Offering Documents, and directly solicited

the purchase of securities by the Plaintiff by means of the Offering Documents such that the

Section 12 Defendants were motivated by the desire to serve their own financial interests.

33.    The Offering Documents contained untrue statements of material fact and failed to

disclose material facts, as set forth herein.  The Plaintiff purchased the Note in the Note Offering

in reliance on the materially false and misleading statements contained in the Offering Documents

and otherwise made by the Section 12 Defendants.

34.     As a result of the Section 12 Defendants' violations of the Securities Act, the Plaintiff has suffered damages.

35.     Less than one year has elapsed between the time the Plaintiff discovered or reasonably could have discovered the facts upon which this Count is based and the time this claim was brought.  Less than three years have elapsed between the time the Plaintiff purchased the Note pursuant to the Note Offering and the time this action was commenced.

## COUNT 2

## VIOLATION OF SECTION 15 OF THE SECURITIES ACT

36.     Plaintiff incorporates by reference the allegations in the above paragraphs 1 through 35 as if fully set forth herein.  This count is based on negligence and strict liability and does not sound in fraud. Any allegation of fraud or fraudulent conduct and/or motive are expressly excluded from this Count.

37.     This Count is asserted against the Officer Defendant for violations of Section 15 of the Securities Act, 15 U.S.C. § 77o, on behalf of Plaintiff who purchased the Note pursuant to Officer Defendant's offering materials and oral representations and was damaged thereby.

38.     At all relevant times, the Officer Defendant was a controlling person of the Company within the meaning of Section 15 of the Securities Act.  The Officer Defendant served as an executive officer or managing member of the Company prior to and/or at the time of the Note Offering.

39.     The Officer Defendant at all relevant times participated in the operation and management of the Company and conducted and participated directly and indirectly in the conduct of the Company's business affairs.  Because of his position of control and authority as an officer and managing member of the Company, Officer Defendant was able to, and did, control the

contents of the Offering Materials and other communications to the Plaintiff concerning the Note, and the contents of the Offering Materials and other communications to the Plaintiff contained materially untrue information.

40.     As a result, the Officer Defendant is liable under Section 15 of the Securities Act to Plaintiff, and as a direct and proximate result of the Officer Defendant's conduct, the Plaintiff suffered damages in connection with her purchase of the Note.

41.     Less than one year has elapsed between the time the Plaintiff discovered or reasonably could have discovered the facts upon which this Count is based and the time this claim was brought.  Less than three years have elapsed between the time the Plaintiff purchased the Note pursuant to the Note Offering and the time this action was commenced.

## COUNT 3

## COMMON LAW FRAUD

42.     Plaintiff incorporates by reference the allegations in the above paragraphs 1 through 41 as if fully set forth herein.

43.     Defendants made multiple misrepresentations and material omissions of facts to the Plaintiff in order to induce her into purchasing the Note Security.

44.     Defendants knew that the multiple false, misleading statements and material omissions of facts were false when made because (a) Defendant JDS did not have a viable investment opportunity for the Hydro-Plant, (b) Defendant JDS did not disclose that Urban America did not have any experience as either an investor or a sponsor in clean energy projects, (c) Urban America did not have any meaningful assets, (d) Defendant JDS was nearly insolvent when he offered the Note Security to Plaintiff such that there were no assets available to secure the Note Security, and (e) Defendant HS knew that Defendant JDS was insolvent and that the

proceeds of the Note Security would be used to return the $100,000 loan that Defendant HS made to his Defendant JDS while falsifying the Bankruptcy Petition to discharge the loan.

45.     Defendants purpose for making the false, misleading statements and material omissions was to induce the Plaintiff to rely on such statements and omissions in order to induce the Plaintiff to purchase the Note Security.

46.     Plaintiff did rely on Defendants false, misleading statements and material omissions.

47.     Plaintiff was damaged by at least $100,000 as a result of Defendants fraudulent conduct.

## COUNT 4

## BREACH OF CONTRACT
### (against Urban America and Defendant JDS)

48.     Plaintiff incorporates by reference the allegations in the above paragraphs 1 through 47 as if fully set forth herein.

49.     Defendant Urban America entered in to contract with the Plaintiff via the Note Security.   Defendant JDS also entered into contract with the Plaintiff through the Pledge Agreement.

50.     Plaintiff performed her obligations under both the Note Security and the Pledge Agreement when she paid $100,000 for the Note Security.

51.     Defendant Urban America defaulted on the terms of the Note Security by not paying the Plaintiff $100,000 upon the Note Security's maturity.  Defendant JDS defaulted on the Pledge Agreement when Defendant JDS did not cure Urban America's default of the Note Security.

52.     As a result of the breaches of both Urban America and Defendant JDS, Plaintiff has suffered damages of at least $100,000.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

(1)     Requiring Defendants to pay damages sustained by Plaintiff by reasons of the acts and transactions alleged herein;

(2)     Awarding judgment be entered against Defendants in favor for the Plaintiff in the amount of $100,000;

(3)     Awarding Plaintiff pre-judgment and post-judgment interest, as well as Plaintiff's reasonable attorneys' fees and costs, and;

(4)     Awarding such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury in this action of all issues so triable.

Dated:  New York, New York
        August 12, 2020

On behalf of Katherine Krause

By:_____
James Stephenson Burrell, II (JB-7399)
BURRELL LAW, P.C.
246 Fifth Avenue, 3rd Floor
New York, New York 10001
Tel.: (347) 620-6398
Fax.:(347) 620-1403
Email: james@burrell-law.com